# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ROY KINARD III,

*Plaintiff-Appellant,*

*v.*

THE FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.,

*Defendants-Appellees.*

———————————————

On Appeal from the United States District Court
for the Middle District of Florida, Jacksonville Division
No. 3:22-cv-00897 (Hon. Marcia Morales Howard, U.S. District Judge)

———————————————

## APPELLANT'S REPLY BRIEF

———————————————

Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, #26152
Washington, DC 20001
202-455-4399
sam@rightsbehindbars.org


*Counsel for Plaintiff-Appellant Roy Kinard*

July 26, 2024

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................. 1

I.  Kinard Stated a Claim Under the ADA and RA. ........................................ 1

a)  Kinard sufficiently alleged that he was denied access to prison activities

and services because of his disability ................................................. 1

b)  Kinard sufficiently alleged discriminatory intent ................................... 10

II.  This Court Should Not Affirm on the Alternative Basis of Exhaustion ...... 12

a)  This Court should not reach the affirmative defense of exhaustion because

Kinard was not afford an adequate opportunity to develop a record ............. 12

b)  Kinard exhausted his administrative grievances .................................... 15

III.  Kinard Stated a Claim Under the Eighth Amendment ............................... 17

a)  Deliberate indifference .......................................................... 17

b)  Causation .................................................................... 23

CONCLUSION ............................................................................................ 25

CERTIFICATE OF COMPLIANCE .................................................................... 26

CERTIFICATE OF SERVICE ........................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995)......................................................... 20

*Baughman v. Walt Disney World Co.* 685 F.3d 1131 (9th Cir. 2012) .................... 6

*Bilal v. Geo Care, LLC*, 981 F.3d 903 (11th Cir. 2020).................................... 2, 8

*Bingham v. Thomas*, 654 F.3d 1171 (11th Cir. 2011) ........................................ 2

*Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072 (11th Cir. 2007) .............................. 4

*Bryant v. Madigan.* 84 F.3d 246 (7th Cir. 1996)......................................... 1, 7

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008)....................................12, 13, 14

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)............... 5

*Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003) .......................................... 17, 24

*Goebert v. Lee Cnty.*, 510 F.3d 1312 (11th Cir. 2007)................................... 16, 24

*Hall v. Higgins*, 77 F.4th 1171 (8th Cir. 2023) ............................................ 5

*Hammonds v. Theakston*, 833 F. App'x 295 (11th Cir. 2020)............................. 18

*Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991) ........................................ 19

*Hoffer v. Secretary, Florida Department of Corrections*, 973 F.3d 1263 (11th Cir. 2020) ............................................................................................................... 19

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ........................................ 16

*Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012)............... 10

*Marlor v. Madison County, Idaho* 50 Fed. App'x 872 (9th Cir. 2002) ................. 6

*McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135 (11th Cir. 2014) ............................................................................................................... 11

*McIlwain v. Burnside*, 830 F. App'x 606 (11th Cir. 2020) ................................. 14

*McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068 (11th Cir. 1996)..................... 4

*Middleton v. Andem*, No. 07-CV-20, 2007 WL 3011057 (N.D. Fla. Oct. 15, 2007) ............................................................................................................... 23

*Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800 (11th Cir. Sept. 21, 2022) ............................................................................................................... 14

*Morris v. California*, 2022 WL 2901730 (9th Cir. July 22, 2022) ......................... 6

*Pamplin v. Lucas*, No. 22-15284, 2023 WL 3478412 (9th Cir. May 16, 2023)....... 8

*Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185 (10th Cir. 2007) ... 5, 11

*Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289 (11th Cir. 2005) .................... 7

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) ...................................................... 2

*Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002) ............................................ 19

*Smith v. Knox Cnty. Jail*, 666 F.3d 1037 (7th Cir. 2012) ...................................... 24

*Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000) ................................................ 24

*United States v. Georgia*, 546 U.S. 151 (2006) ...................................................... 3

*Wade v. McDade*, -- F.4th--, 2024 WL 3354963 (11th Cir. July 10, 2024) (en banc) ...................................................................................................................... 17

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205 (11th Cir. 2015) ............. 15

*Williams v. Barrow*. 559 F. App'x 979 (11th Cir. 2014)....................................... 20

*Windham v. Harris Cnty., Texas*, 875 F.3d 229 (5th Cir. 2017)............................. 5

*Wood v. President & Trustees of Spring Hill College in City of Mobile*, 978 F.2d 1214 (11th Cir. 1992) ........................................................................................... 4

**STATUTES**

42 U.S.C. § 12132.................................................................................................. 10

## ARGUMENT

### I.    Kinard stated a claim under the ADA and RA.

Defendants makes two critical errors in their argument that Kinard's ADA and RA claims fail. First, Defendants underread Kinard's allegations and mischaracterize the applicability and reach of the atextual "medical treatment" exception in the Seventh Circuit's case *Bryant v. Madigan*. 84 F.3d 246, 249 (7th Cir. 1996). Second, Defendants incorrectly state that Kinard has not shown intentional discrimination, when he has alleged facts sufficient to show that Defendants acted with deliberate indifference.

> *a) Kinard sufficiently alleged that he was denied access to prison programs, activities and services because of his disability.*

Defendants make three mistakes in their analysis of the merits of Kinard's failure-to-accommodate claim. First, Defendants analyze Kinard's *pro se* complaint based on the arguments he sets forth, not, as required on review of this order dismissing Kinard's complaint, the facts he alleges. Second, Defendants apply the wrong causation standard for ADA and RA claims. And third, Defendants mischaracterize the extent to which *Bryant v. Madigan*'s exception to ADA liability for "medical treatment" is binding in this Circuit and significantly overstate the scope of this atextual exception even in the circuits where it has been adopted.

First, Defendants are incorrect that, in his complaint "Kinard did not allege any services or programs that Kinard was denied access to due to his alleged disability." Florida Dep't of Corr. Ans. Br. ("FDOC Br.") at 5. On a motion to dismiss, courts review complaints for "factual allegations sufficient to 'raise a right to relief above the speculative level,'" on the assumption that all the allegations in the complaint are true. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When a complaint is drafted by a *pro se* litigant, courts must "liberally construe *pro se* pleadings and hold them to 'less stringent standards' than we apply to formal pleadings that lawyers draft." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Under this standard, Kinard has adequately pled that he was denied meaningful access to several prison programs and services. Meaningful access requires that programs and services be "readily accessible." *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (quoting 28 C.F.R. § 35.150). Programs and services that are accessible to people with disabilities only upon risk of injury or humiliation are not meaningfully accessible. *See* Op. Br. at 10–11.

Kinard alleges facts sufficient to show that he lacked meaningful access to mobility, his work assignment, the prison yard, and the medical unit, all of which are programs, services, or activities under the ADA. *See* Op. Br. at 10–13. He alleged

throughout his complaint that he cannot meaningfully access his work assignment because, to arrive at work, he must walk half a mile on his broken foot, either with no assistive device or in an airless air cast, in "excruciating pain." ECF No. 33 at 9–10, 11, 13–14 (App. 41–42, 43, 45–46). For the same reason, he cannot meaningfully access other prison programs that he must walk to or move about while in, including the yard and the medical unit. ECF 33 at 16 (App. 48) (explaining that Kinard's lack of meaningful access to the prison yard also stems from the fact that, due to his disability, he would be unable to safely and quickly escape if a fight broke out). Finally, because mobility is itself a program, service, or activity within a prison (*United States v. Georgia*, 546 U.S. 151, 157 (2006)), Kinard's many assertions that he cannot move about the prison without considerable pain are alone sufficient to show lack of access to a prison program or service. *See* ECF No. 33 at 8 (App. 40) ("plaintiff could hardly walk"); *id*. at 10 (App. 42) (pain from walking caused inflammation and "excruciating" pain); *id*. at 11 (App. 43) (walking a half mile to work, walking long hallways in the prison, and climbing stairs causes such "excruciating pain" that it "feels like [his] leg is on fire."); *id*. at 14 (App. 46) ("[p]laintiff suffers daily from walking on his foot that has not healed properly.").

Second, in arguing that Kinard does not adequately allege that he was discriminated against *because* of his disability, Defendants rely on two unpublished Ninth Circuit opinions that do not accurately reflect the state of the law in that circuit,

much less this one. FDOC Br. at 5–6. To allege a failure-to-accommodate claim, a plaintiff must show that "that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). Under this standard, Kinard does not need to show that he was *denied accommodation* because of his disability, but rather that he was *excluded from meaningful participation* in services, programs or activities because of his disability. And Kinard has alleged, many times over, that, but-for his disability, he would have been able to access prison programs, including mobility, his work assignment, the yard, and medical. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) ("The ADA imposes a "but-for" liability standard."); ECF 33 at 10 (App. 42) (on way to work, "Plaintiff's foot swelled up. . . and the pain was excruciating"); *id.* at 11 (App. 43) ("the foot swells as he walks and he is in extreme pain"); *id.* ("Plaintiff is forced to continue to walk approximately a ½ mile to work, walk long hallways, and climb stairs and at all times is in excruciating pain" from his "swollen broke foot"). Nowhere in Defendants' brief do they dispute that these programs constitute a "program, service, or activity" under the ADA.

Instead, Defendants cite to *Wood v. President & Trustees of Spring Hill College in City of Mobile*, for the proposition that ADA claims fail when a plaintiff fails to "allege[], much less establish[], that she demanded any reasonable . . . accommodations . . . because of her handicap." 978 F.2d 1214, 1222 (11th Cir. 1992).

This statement is taken out of context. The *Wood* court inquired into whether the plaintiff had requested reasonable accommodations in order to determine whether she was "otherwise qualified" for admission to a particular college. There is no dispute in this case as to whether Kinard is otherwise qualified to access the prison services from which he has been excluded. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989) (holding that the government has an obligation to provide for the "basic human needs," of incarcerated people, including "shelter, medical care, and reasonable safety"). In fact, Kinard is being *required* by defendants to participate in the prison's work program, for if he refuses, he will be placed in solitary confinement. ECF No. 33 at 14 (App. 46).

And though *Wood* touches on a central tenant of disability law, that defendants must be aware of a plaintiff's disability to be liable for failure to accommodation, plaintiffs can make this showing either by requesting an accommodation or because their disability is "obvious." *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023); *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 237 (5th Cir. 2017); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007). Kinard has alleged facts that show both. He directly requested multiple accommodations, including a lay-in order and air in his air cast, from Dr. Cordero. ECF 33 at 11, 13 (App. 43, 45). And he alleges that jail and medical officials were aware of his broken

foot and witnessed him dragging it, in excruciating pain, a half mile to work and back every day. ECF 33 at 14 (App. 46).

Defendants' attempt to complicate the ADA's causation standard by citing to out-of-circuit, unpublished cases is unpersuasive. *Marlor v. Madison County, Idaho*'s analysis of what constitutes meaningful access conflicts with more recent published Ninth Circuit precedent and should be disregarded. 50 Fed. App'x 872 (9th Cir. 2002). *Marlor* reasoned that, though the plaintiff fell in the shower and went outside less often, he had not been entirely excluded from meaningful access to these programs and services because he "used the shower facilities, took advantage of visiting privileges, accessed the library and, at times, participated in recreation." *Id.* Ten years later, the Ninth Circuit clarified in *Baughman v. Walt Disney World Co.* that meaningful access requires more than providing the bare "necessary" accommodations that disabled people "can't do without," and admonished defendants for taking "such a retrograde position." 685 F.3d 1131, 1133–35 (9th Cir. 2012). In *Morris v. California*, the Ninth Circuit affirmed the dismissal of plaintiff's ADA claim because he failed to name the particular "services, programs, or activities" from which he was excluded, but the court granted leave to amend, holding that specifying the "services, programs, or activities from which he was excluded and how his disabilities were the cause of his exclusion," would "cure the deficiencies in his ADA claim." 2022 WL 2901730 at *1 (9th Cir. July 22, 2022).

This case is inapposite; Kinard's complaint contains specific allegations that he could not access his work program and the prison yard, and that his disability was the but-for cause of this exclusion because it precluded him from walking to these programs without experiencing excruciating pain. ECF No. 33 at 9–10, 11, 13–14 (App. 41–42, 43, 45–46).

Third, FDOC mischaracterizes the application and reach of *Bryant v. Madigan*'s exception to ADA liability for medical treatment. 84 F.3d 246, 249 (7th Cir. 1996); FDOC Br. at 7–13. This Court has never, in a published case, adopted the Seventh Circuit's atextual exception to the ADA's duty to accommodate for medical treatment. *Id.* Contrary to Defendants' representation, this Court did not adopt *Madigan*'s holding in *Schiavo ex rel. Schindler v. Schiavo*, where it cited *Madigan* to support the narrow proposition that it was not Congress's intent for the ADA to circumvent court orders in termination of care cases. 403 F.3d 1289 (11th Cir. 2005). This Court should decline to follow *Madigan*'s reasoning in this case, as it is out of step with contemporary methods of statutory interpretation and the Supreme Court's more recent interpretations of disability law. Op. Br. at 16–18. In response to Kinard's opening brief, and much like Judge Posner in *Madigan* itself, Defendants do not mention the actual text of the ADA and offer no reason why *Madigan*'s holding is a plausible interpretation of it other than asserting that, as a policy matter, it "makes good sense." FDOC Br. 8.

However, even if this Court were to follow *Madigan* and hold that claims predicated on inadequate medical treatment fall outside of the scope of the ADA, Kinard's claim survives. In arguing otherwise, Defendants inappropriately focus not on the facts Kinard alleges, but on their reading of the legal theories Kinard presents. *See*, *e.g.*, FDOC Br. 9 (quoting portions of Kinard's complaint that mention medical treatment and arguing that "Kinard has made abundantly clear that medical treatment is the source of his claims"); *id.* at 13 (characterizing Kinard's complaint as a "squabble[] over medical treatment"). This is not the standard under which courts review complaints, and it is particularly inappropriate in the *pro se* context where Kinard's allegations are to be "liberally construed." *See Bilal*, 981 F.3d at 911. Further, Kinard has also brought an Eighth Amendment claim for denial of necessary medical care, and thus, of course his complaint also contains allegations concerning the medical treatment he received. The presence of these allegations does not defeat his separate ADA claim. *See Pamplin v. Lucas*, No. 22-15284, 2023 WL 3478412, at *2 (9th Cir. May 16, 2023) (reversing district court's holding that plaintiff had requested treatment, not accommodation, because he "used the words 'treated,' 'treatment,' and 'medical' throughout his requests," and explaining that "even assuming that Pamplin's complaint requested both [an accommodation] and treatment, it should not be treated as only a request for medical treatment").

Kinard's ADA claim survives precisely because he seeks accommodations, such as a lay-in order and air in his air cast, that would facilitate his mobility and access to various programs around the prison. ECF 33 at 11, 13 (App. 43, 45). Contrary to Defendants' characterization that "Kinard's request for bed rest is not targeted at facilitating Kinard's access to some program or service, but about facilitating the healing process of his injured leg," FDOC Br. at 13, it is clear from the allegations surrounding Kinard's mention of this request that he sought a lay-in order because he was unable to meaningfully access his job by walking on his broken foot. *See* ECF 33 at 11 (App. 43) ("Plaintiff asked Dr. [Cordero] for . . . a 'Lay In' due to the fact that the foot swells as he walks and Plaintiff is in extreme pain. Dr[. Cordero] advised Plaintiff there was nothing he could do and to report back to work. Plaintiff is forced to continue to walk approximately ½ a mile to work. . ."). Kinard goes on to allege that, absent a lay-in, he will be placed in solitary confinement if he does not report to work. ECF 33 at 13–14 (App. 45–46). His request for a lay-in is clearly tied to his desire to participate in the work program in a manner that does not require him to experience "extreme pain."

Further, Defendants' interpretation of the line between medical treatment and accommodation is so broad that it would eclipse the ADA. FDOC argues that because the distinction between accommodation and medical treatment can be "muddy," accommodations that "facilitate the healing of the injury," even while also

facilitating access to programs, should be barred under *Madigan*. FDOC Br. at 11–13. This logic is backward. In navigating this "muddy" distinction, the Court should refer back to the language of the statute, not preference an atextual exception. Title II states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This mandate contains no mention of an exception for medical treatment. When it is difficult to determine whether a particular accommodation constitutes medical treatment, Courts should err on the side of the statute. Wheelchairs, wheelchair ramps, crutches, shower grab bars, elevators, lower bunks and most other paradigmatic disability accommodations will often facilitate the healing of injury in addition to providing access to services. Defendants' position would therefore abrogate most of an important federal statute in service of an atextual and policy-based exception that this Court has never adopted.

> b) *Kinard sufficiently alleged discriminatory intent.*

Kinard has alleged that Defendants acted with deliberate indifference, which is sufficient to meet the intentional discrimination requirement in ADA damages cases. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012) ("a plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference"). "To establish deliberate indifference, a plaintiff must show that the

defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (quoting *Liese*, 701 F.3d at 344). "Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm." *Id.*; *see also Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007) (explaining that a defendant's knowledge of a plaintiff's need for accommodation may stem either from the plaintiff's "request for an accommodation" or from "an entity's knowledge of the individual's disability and his need for, or attempt to participate in or receive the benefits of, a certain service").

Kinard has alleged facts showing both that (1) Defendants were aware that he needed an accommodation, and (2) that his disability and consequential lack of access was "obvious." Kinard alleges at several points in the complaint that he requested accommodations directly from Defendants. *See* ECF 33 at 11 (App. 43) (alleging that Kinard explained his difficultly walking to work to Dr. Cordero and asked for a "lay-in"); *id.* at 13 (App. 45) (alleging that Kinard asked Dr. Cordero for air in his air cast). Further, he alleges that "medical and FDOC is aware of the damaged foot but continues to force Plaintiff to work and walk around in an air cast with no air, and severe chronic pain." ECF 33 at 14 (App. 46). Following from this

awareness is that fact that Kinard would be in pain at his job, and thus lacked meaningful access and needed an accommodation.

Kinard has also shown that Defendants reacted to their knowledge of his need for an accommodation with deliberate indifference. He alleges, that, after he expressed the extreme difficulty he has walking to work and asked Dr. Cordero for a lay-in pass, Dr. Cordero merely told him to "report back to work. ECF 33 at 11 (App. 43). When he later asked Dr. Cordero for air in his air cast, Dr. Cordero simply said "this concludes the meeting." *id.* at 13 (App. 45). These callous remarks evince a knowing disregard for Kinard's federal right to reasonable accommodations.

## II. This Court Should Not Affirm on the Alternative Basis of Exhaustion.

Defendants argue that this Court should affirm the district court on the alternative basis that Kinard did not exhaust his administrative remedies. It should not do so, for two independent reasons. First, this Court has held that addressing exhaustion—an affirmative defense—when a plaintiff has not had the opportunity to supplement the record is inappropriate. Second, even if this Court reached the question of exhaustion, Kinard put Defendants sufficiently on notice of his grievances.

> *a) This Court should not reach the affirmative defense of exhaustion because Kinard was not afforded an adequate opportunity to develop a record.*

Defendants quote this Court's statement in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), that whether a prisoner has properly exhausted his administrative

remedies "should be decided on a Rule 12(b) motion to dismiss." FDOC Br. 14. The statement is true but lacks an important qualifier. Deciding exhaustion, as here, requires factfinding and such factfinding at Rule 12 is proper "*so long as* … the parties have sufficient opportunity to develop a record." *Bryant*, 530 F.3d at 1376 (emphasis added). *Bryant* quoted the Ninth Circuit for its conclusion: "[I]f the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust—a procedure closely analogous to summary judgment—then the court must assure that [the plaintiff] has fair notice of his opportunity to develop a record." *Id.* at 1377 n.14. Kinard never had any opportunity to develop a record and Defendants fail to argue that he did.

*Turner v. Burnside*, unmentioned by Defendants, lays out the framework for determining exhaustion on Rule 12. 541 F.3d 1077 (11th Cir. 2008). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* at 1082. Then, if plaintiff's version of facts does not merit dismissal, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

This process can only take place, however, if the plaintiff is provided an opportunity to develop a record, and Kinard was not. As *Bryant* explained, the court must ensure that the plaintiff has fair notice of his opportunity to develop a record. 530 F.3d at 1377 n.14. Kinard was never given such an opportunity.[1] Kinard's response to Defendants' motion to dismiss specifically stated as to exhaustion that "during discovery Plaintiff will produce several sick calls and medical reports, witnesses who will testify[,] etc." ECF 55 at 7. Kinard was therefore clearly not on notice that factfinding was either possible or appropriate at Rule 12, as it typically is not. Kinard's case is consistent with *McIlwain v. Burnside*, in which this Court held that a district court erred when it ruled on exhaustion "without making specific findings, violating the requirements of *Turner* and *Bryant*," even though the plaintiff had made "an explicit request for the district court to gather a key document from the defendants and perform a specific evidentiary hearing." 830 F. App'x 606, 611 (11th Cir. 2020). By contrast, in cases like *Montalban v. Samuels*, this Court explained that when the district court instructs the parties of their opportunity to develop the record, factual resolution can be appropriate on Rule 12. No. 21-11431, 2022 WL 4362800, at *3 (11th Cir. Sept. 21, 2022).

---

[1] The district court's decision to not put Kinard on notice about his opportunity to build a record was perfectly understandable given its decision to not reach Defendants' exhaustion defense. The failure to do so, however, undermines Defendants' argument for affirmance on the alternative basis of exhaustion.

Defendants run into a second issue regarding notice of factfinding: Defendants seek this Court to resolve factfinding on exhaustion despite the district court not reaching the issue. Although *Turner* articulated the test for exhaustion on Rule 12, which this Court has applied dozens of times since, it did not actually apply it because the district court had failed to decide "relevant factual issues," and "it would be premature to apply" the test when the district court had failed to make any findings. *Id.* at 1086. The same is true here. The district court did not address Defendants' exhaustion defense and certainly did not resolve any factual disputes.

Since *Turner*, this Court has applied its test to reject defendants' attempt to affirm without any factfinding. In *Whatley v. Warden, Ware State Prison*, for instance, this Court wrote:

> Defendants ask us not to remand for the District Court to follow the two-step *Turner* process. They say we should simply affirm, finding on our own that the January 18 grievance is a fiction and that [plaintiff] fabricated the entire episode. But we are a court of appeals. We do not make fact findings. We review them for clear error. Without any explicit findings of fact (at best only implicit ones, even under defendants' view), we cannot undertake that review.

802 F.3d 1205, 1213 (11th Cir. 2015).

This Court has no findings of fact to review and therefore should, at the most, remand for the district court to consider the exhaustion defense in the first instance.

*b) Kinard exhausted his administrative grievances.*

Even were it appropriate for this Court to consider whether Kinard exhausted his administrative remedies, he did so. As Defendants describe, Kinard filed four sets of grievances, three that were accepted as fully exhausted and one that was rejected for being redundant. In one grievance, he complained about still being injured while his "lay in was up" and wrote "there is a serious medical issue to my foot that I'm forced to walk, work on a swollen ankle in pain." ECF 54-3 at 4. In a second, he wrote that his foot "hurts when [he] walk[s] and that he "ha[s] been forced to walk on it for almost three months due to Dr. [Cordero's] indifference." ECF 54-5 at 2, 4.

These grievances were sufficient to exhaust the claims he raises on appeal under the ADA. Defendants explain in great detail that his grievances primarily concerned medical care rather than accommodation. FDOC Br. 16–19. This is true but irrelevant. The relevant legal question is whether his grievances put defendants sufficiently on notice as to needed disability accommodations, not whether they primarily concerned medical care. Defendants also fault Kinard for not using the legal term "disability" rather than simply writing, for example, "I'm forced to walk, work on a swollen ankle in pain." ECF 54-3 at 4. The purpose of grievances is to alert prison officials to troubling facts, not to assert legal theories. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1325 (11th Cir. 2007); *see also Johnson v. Johnson*, 385 F.3d 503, 517-18 (5th Cir. 2004) ("the purpose of the exhaustion requirement is to

give prison administrators an opportunity to address a problem, and they can do this whether or not the prisoner tells them" a specific legal theory); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 127 (2007) ("we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory"). Kinard's grievances that he was denied a lay-in and was forced to walk and work in pain because of Dr. Cordero's indifference were sufficient to put Defendants on notice regarding his problems.

### III. Kinard Stated a Claim Under the Eighth Amendment.

Defendants do not contest that Kinard demonstrated a "serious medical need," the first step in evaluating whether a plaintiff has stated an Eighth Amendment claim for inadequate medical care. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). They argue instead that Kinard has not adequately alleged either deliberate indifference or causation. Both arguments fail.

*a) Deliberate indifference.*

To be deliberately indifferent, a defendant to an Eighth Amendment medical care claim must subjectively be aware of a risk of serious medical need and disregard it or react unreasonably to it. *Wade v. McDade*, -- F.4th--, 2024 WL 3354963, at *2 (11th Cir. July 10, 2024) (en banc). As Defendants correctly note, plaintiffs cannot bring claims on the grounds that medical defendants "could be doing more."

17

Centurion Ans. ("Cent. Br.") at 11, 17. Nor can they bring claims when medical defendants exercise good-faith medical judgment and simply disagree with the plaintiff about the appropriateness of a given treatment. Cent. Br. 16. This Court's precedent, however, makes clear that Kinard's allegations fall into neither category.

In Kinard's opening brief, he discussed four cases in which this Court considered allegations of blatant mistreatment and held that they did not qualify as good-faith medical disagreements that entitle prison officials to dismissal. *See* Op. Br. 25–26 (citing *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996); *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989); *Goebert v. Lee County*, 510 F.3d 1312, 1328 (11th Cir. 2007); *Rogers v. Evans*, 792 F.2d 1052, 1060 (11th Cir. 1986)). These cases control Kinard's, and Defendants do not even attempt to distinguish them. Their answering brief simply ignores them.

Defendants rely instead on precedent that does not bear on Kinard's claim for reasons both substantive and procedural. In *Hammonds v. Theakston*, the origin of Defendants' "could be doing more" rhetoric, the defendants moved for summary judgment after a doctor provided a detainee with short-acting insulin rather than a combination of short-acting and long-acting insulin, medical treatment that had worked in the past but was not the medication the detainee preferred. 833 F. App'x 295, 300–02 (11th Cir. 2020). Two physicians testified as expert witnesses that treating the plaintiff with short-acting insulin alone was reasonable. *Id.* at 301. This

Court, without addressing the merits of the constitutional question, held that the medical officials were entitled to qualified immunity because "the law did not clearly establish that providing Hammonds with only short-acting insulin would amount to deliberate indifference." *Id.* at 302.

Kinard's case could not be more different. Dr. Cordero has not invoked the protections of the affirmative defense of qualified immunity. *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) ("Qualified immunity is an affirmative defense to personal liability, which must be pled, and if it is not, it is deemed waived."). No expert witness has justified Dr. Cordero's treatment nor has Dr. Cordero himself, as this case is on a permissive Rule 12 standard and not on summary judgment after discovery. Most importantly, and as ignored by Defendants, it is difficult to imagine what Dr. Cordero's purported medical judgment could possibly have been. There is no suggestion in Kinard's complaint that Dr. Cordero exercised any medical judgment in requiring Kinard to drag a broken foot half a mile to work and back; nor in refusing to even look at Kinard's foot when he informed Dr. Cordero it was "still swollen, inflamed, discolored, and very painful;" nor in providing an air cast for his broken foot but refusing to fill it up with air, making it more harmful than not. ECF 33 at 10, 11, 12–13 (App. 42, 43, 44–45).

Defendants' other authority is no help either. Both *Hoffer v. Secretary, Florida Department of Corrections* and *Harris v. Thigpen* were systemic attacks on

prison-wide policies, one after an evidentiary hearing and one after trial. 973 F.3d 1263 (11th Cir. 2020); 941 F.2d 1495 (11th Cir. 1991). In *Hoffer*, defendants had agreed to test and monitor all prisoners with hepatitis C but prioritize expensive medication for those whose cases had turned severe, a triaging that their expert witness testified was appropriate. *Harris* concerned Alabama's treatment of prisoners with HIV in the late 1980s, and this Court affirmed a post-trial ruling that its extensive treatment of HIV-positive prisoners was not deliberately indifferent— even if imperfect—given the immense challenges that HIV presented at the time, also with the benefit of expert testimony supporting their actions. 941 F.2d at 1518. *Adams v. Poag* was also decided on summary judgment, the "sole issue raised on th[e] appeal [wa]s whether the district court properly denied the appellants qualified immunity," and defendants had expert testimony justifying their medical decisions. 61 F.3d 1537, 1546 (11th Cir. 1995).

The only case Defendants cite on appeal from a Rule 12 ruling is *Williams v. Barrow*, an unpublished opinion where this Court did indeed hold that a good-faith exercise of medical judgment had occurred. 559 F. App'x 979, 984 (11th Cir. 2014). In *Williams*, the defendant provided pain medication and physical therapy multiple times a week for a prisoner recovering from surgery, but the prisoner complained that the defendant did not also provide occupational therapy gradually weaned the prisoner off of pain medication. *Id.* This Court held that the plaintiff had failed to

show that the plaintiff had failed to allege that the doctor was aware that he was creating a substantial (or any) risk of harm. That is far from Kinard's case, where Kinard alleges *inter alia* that Dr. Cordero was fully aware that Kinard had a broken foot but nonetheless failed to put air in his cast or prevent him from walking long distances to and from work.

Defendants also warp Kinard's allegations and seek inferences in their favor to make Kinard's concerns appear to be nitpicking over minutiae. For example, Defendants discuss Dr. Cordero prescribing an "air cast" as part of his treatment. Cent. Br. 14. They ignore that nobody ever filled the cast with air, rendering it totally useless. After nearly a month of this empty gesture, Kinard begged Dr. Cordero in-person to put air into the cast, and the doctor replied only with "this concludes the meeting." ECF 33 at 13 (App. 45).

Defendants repeatedly seek inferences in their favor, inappropriate on Rule 12 generally and particularly so with a *pro se* complaint. They take as a given, for example, that everything Dr. Cordero told Kinard was true and said in good faith. For instance, Kinard alleges that Dr. Cordero told him that his x-rays showed that nothing was wrong and Defendants state this assertion as fact. Cent. Br. 14. It is Kinard's allegations, not Dr. Cordero's, that are taken as true on Rule 12, and the larger pattern of Dr. Cordero's conduct casts doubt on whether what he said was true, as does the fact that Kinard later learned that his foot had in fact been broken

the entire time. ECF 33 at 11 (App. 43). The same is true of Dr. Cordero's statement that "there was nothing more that could be done at the time," which Defendants take as true even when Dr. Cordero was doing nothing at all for Kinard or his broken foot when he made it. Cent. Br. 14. Defendants also seek an inference in Dr. Cordero's favor by arguing that Dr. Cordero's health passes never being implemented or even communicated to Kinard must have been someone else's fault rather than the responsibility of the physician issuing them. Cent. Br. 14 n.6. Finally, Defendants take issue with Appellant's interpretation of Dr. Cordero telling Kinard nothing was wrong with his foot; Kinard begging Dr. Cordero to examine his swollen, discolored foot; and Dr. Cordero saying that Kinard was fine and to go back to work. Defendants argue that "the record" does not support Appellant's inference that Dr. Cordero failed to fulfill Kinard's request and examine his foot. Cent. Br. 16 n.8. Kinard's allegations must be interpreted liberally, however, and Defendants contest a reasonable, if not obvious, inference from Kinard's *pro se* complaint.

Reflexively seeking inferences in their favor even leads Defendants to contradictory readings of Kinard's complaint. Defendants mock Kinard for being "aggrieved" that "Dr. Cordero did not issue a 'lay-in' pass," a nitpicky and "classic, unactionable challenge to the constitutional course of treatment Dr. Cordero prescribed." Cent. Br. 16. Alternatively, where Kinard alleged he was (and continues to be) forced to drag his broken foot a half-mile to work and back, Defendants argue

22

that "there are no allegations that Dr. Cordero had the ability to change Kinard's work assignments." Cent. Br. 15 n.7. Changing work assignments, however, is what a lay-in pass is: a medical excusal of work assignments or other required tasks. *See, e.g.*, *Middleton v. Andem*, No. 07-CV-20, 2007 WL 3011057, at *4 (N.D. Fla. Oct. 15, 2007). Such a pass is provided, naturally, by medical staff. *See id.* To Defendants, excusing Kinard from walking to work on a broken foot is therefore something Dr. Cordero has no ability to do on one page and then a legitimate exercise of his medical judgment on the next, one that this Court has no ability to second-guess. This sort of charity to the actions of Defendants is inconsistent with the Rule 12 standard.

    *b) Causation.*

Dr. Cordero also argues for affirmance on the alternative basis that Kinard failed to allege that Dr. Cordero's delay in treatment caused him serious injury. Each part of this argument is wrong. First, Kinard does not merely argue that Dr. Cordero "delayed" him necessary treatment but that he denied him treatment altogether. Second, even were his claim so circumscribed, Defendants misstate this Court's authority on such cases—when medical officials' deliberate indifference causes excruciating pain, they are not excused from liability so long as the injury they caused is not permanent. Third, even if it did, Kinard's allegations establish a plausible connection between Dr. Cordero's failure to treat him and long-term injury to meet his burden on Rule 12.

Defendants mischaracterize Kinard's claim as about delay. Defendants cite two cases on the failure to connect a medical delay to a physical injury. In *Taylor v. Adams*, a jail nurse saw an unconscious man as he entered the jail and pursuant to the jail's policy ordered him to go to the emergency room immediately instead of treating him herself. 221 F.3d 1254, 1260 (11th Cir. 2000). In *Goebert v. Lee County*, a jail official delayed a pregnant woman's trip to the hospital by one day. 510 F.3d at 1327. This Court therefore appropriately analyzed whether these short delays in emergency situations had a causal effect. Kinard, by contrast, was denied care; at the time of filing his complaint he was still walking back and forth half a mile on a broken foot in an air cast with no air in it and had still not seen an orthopedic surgeon. ECF 33 at 12, 13–14 (App. 44, 45–46).

Defendants are also incorrect that Kinard must plead permanent physical injury to state a claim for deliberate indifference. In *Farrow v. West*, a medical prison official defended a deliberate indifference claim by arguing that their actions did not "resul[t] in a life-long handicap or permanent loss." 320 F.3d 1235, 1245 (11th Cir. 2003). This Court explicitly rejected such a requirement. *Id.* As the Seventh Circuit has explained, a plaintiff need not "allege that the delayed treatment exacerbated his injuries" but can instead argue that "even if his condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–

40 (7th Cir. 2012). Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference. *Id.* at 1040.

Defendants place a pleading burden on Kinard that this Court's authority does not support. Defendants, for instance, blame Kinard for failing to allege that he "requires extensive surgery for the injury to heal." Cent. Br. 18–19. Kinard is a layman who filed his complaint *pro se* and is incarcerated in Defendants' custody. The only way he could possibly learn whether he "requires extensive surgery" is if Defendants permitted him to see an orthopedic surgeon, the very refusal of which being part of their alleged deliberate indifference. ECF 33 at 12 (App. 44).

Finally, Kinard would survive Rule 12 even if he had been required to plead plausible causation to a long-term physical injury. At the time of filing, the series of failures to adequately treat his foot left him with a broken foot still healing incorrectly, "overlapping," with a request to see an orthopedic surgeon still pending. ECF 33 at 13–14 (App. 45–46). While Defendants will have every opportunity to introduce evidence that this injury would have occurred regardless of Dr. Cordero's actions, Kinard's allegations do not support such a conclusion.

## CONCLUSION

For the forgoing reasons, the district court decision should be reversed and this case should be remanded to the district court.

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume, typeface, and type-style requirements of Rule 32(a) of the Federal Rules of Appellate Procedure and Rule 28-1(m) of the Eleventh Circuit Rules. This brief contains 6,376 words, excluding the parts of the document exempted by Fed. R. App. 32(f), as calculated in Version 15.26 of Microsoft Word for Mac 2016. It was prepared in 14-point font using Times New Roman, a proportionally spaced typeface.

/s/ *Samuel Weiss*
Samuel Weiss

**CERTIFICATE OF SERVICE**

I certify that on July 26, 2024, I electronically transmitted the foregoing brief to the Clerk of the Court using the appellate CM/ECF System, causing it to be served on counsel of record, who are all registered CM/ECF users.

/s/ *Samuel Weiss*
Samuel Weiss